UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAHNAWAZ M. MATHIAS, | : | **CASE NO. 1:16-CV-01338** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| | : | |
| YORK COUNTY, *et al*., | : | |
| | : | |
| Defendants | : | |

**<u>MEMORANDUM</u>**
February 28, 2017

## I.  Introduction.

The plaintiff, Shahnawaz M. Mathias, claims that the defendants violated his rights in connection with parole revocation proceedings.    Some of Mathias's claims are barred by the Eleventh Amendment, and his complaint otherwise fails to state a claim upon which relief can be granted.    Thus, we will grant the defendants' motions to dismiss the complaint.   We will, however, grant Mathias leave to file an amended complaint.

## II.  Background and Procedural History.

On June 30, 2016,  Mathias began this action by filing a complaint naming the following six defendants: (1) York County; (2) York County Adult Probation

Department; (3) April Billet-Barclay, Chief Probation Officer; (4) Albert Sabol, former Chief of Adult Probation; (5) Amy Alu, Adult Probation/Parole Supervisor; and (6) Crystal Perry, Adult Probation/Parole Officer.   The complaint names Billet-Barclay, Sabol, Alu, and Perry in both their individual and official capacities. Mathias alleges the following facts in his complaint.

Mathias pleaded guilty in the Court of Common Pleas of York County to indecent assault and unlawful contact with a minor.   On November 15, 2006, he was sentenced to an aggregate sentence of five years of probation.   A series of direct appeals and appeals of Post-Conviction Relief Act (PCRA) orders followed.

A condition of Mathias's probation was that he attend counseling.   On September 27, 2013, Mathias filed a petition with the trial court to change his counseling treatment provider.   At that time, an appeal of the dismissal of his most recent PCRA petition was pending.   Also, the York County Adult Probation Department filed a petition seeking a hearing to resolve how much time credit Mathias should receive toward his probation sentence.

On October 17, 2013, Mathias filed a petition entitled "Petition for Hearing on Stay and Related Items," in which he highlighted that he had been under probationary supervision since 2006 even though he had been sentenced to only five years of probation in 2006.   On December 3, 2013, the trial court held a hearing, at

which defendant Sabol, among others, testified.   Sabol had been employed with the York County Adult Probation Department for 12 years before he retired in 2012. He testified that in 2002, then President Judge Chronister issued an "unwritten directive" that "when a case is on appeal in an upper court [ ] the local court lacks jurisdiction and cannot change or alter a sentence, and he directed that [the Department] no longer supervises cases that have taken an appeal." *Doc. 1* at ¶22 (quoting *Com. v. Mathias*, 121 A.3d 558, 560 (Pa. Super. Ct. 2015)) (brackets in original).   According to Sabol, the directive was issued, in part, to avoid having to reimburse probationers who successfully appealed their sentences for the costs they incurred because of their probationary sentences.   Judge Chronister's "unwritten directive" caused the York County Adult Probation Department to adopt a policy of not supervising probationers when those probationers appeal a trial court order. Mathias was never informed of the "unwritten directive." *Id.* at ¶¶ 24-25.

On December 5, 2013, the trial court held that because of multiple appeals, as of December 3, 2013, Mathias had served only 666 days of his five-year sentence. Thus, according to the trial court, Mathias had 1159 days remaining on his sentence. That trial court also denied Mathias's request to change counseling centers. Contending that Judge Chronister's "unwritten directive" and the Probation Department's policy was unconstitutional, Mathias filed a motion for

reconsideration. *Id.* at ¶ 28.   After the trial court denied that motion, Mathias filed

an appeal, which the Superior Court quashed as untimely on May 5, 2014.

In the meantime, on March 14, 2014, the York County Adult Probation

Department petitioned the trial court for a hearing to determine whether Mathias had

violated his probation by failing to enter and complete an approved sex-offender

treatment program.   At a hearing on April 21, 2014, Mathias moved to quash the

York County Adult Probation Department's petition, citing the fact that his appeal

challenging the constitutionality of the "unwritten directive" and the York County

Adult Probation Department's related policy was pending before the Superior Court.

*Id.* at ¶ 33.   Mathias also argued that the York County Adult Probation Department

was alleging that he had violated his probation by failing to attend counseling while

his appeal was pending even though pursuant to the policy it had adopted based on

the "unwritten directive," it was not supervising him at the time. *Id.* at ¶ 34.

Concluding that Mathias had violated his probation, the trial court revoked

Mathias's probation and sentenced him to serve 6 to 23 months in prison.   Mathias

was incarcerated.

After the trial court denied his motion for reconsideration, Mathias appealed

to the Superior Court.   By an Opinion issued on May 28, 2015, the Superior Court

concluded that Mathias's sentence was illegal.   It reasoned that at the time the trial

court purported to revoke Mathias's probation, over seven years had passed since Mathias was sentenced and his term of probation had already expired.   It further reasoned that although the York County Adult Probation Department "may very well have a policy of **not supervising probation** when an appeal is pending," "that policy did not act to stay [Mathias]'s sentence and does not alter the fact that, during the pendency of his appeals, [Mathias] was **serving his sentence**." *Doc. 1* at ¶41 (quoting *Mathias*, 121 A.3d at 563) (emphasis in original).   Because Mathias's term of probation had expired, the Superior Court concluded that the trial court lacked authority to revoke probation, and the sentence it imposed on Mathias was illegal. The Superior Court vacated Mathias's sentence.

Mathias contends that defendants Billet-Barclay, Sabol, Alu, and Perry, acting in their capacity as probation and parole officers, falsely arrested him knowing that they had no probable cause to do so and that they had no basis in fact or law to do so.   He contends that because of his false arrest, he was unlawfully detained.   He also contends that defendants Billet-Barclay, Sabol, Alu, and Perry maliciously prosecuted him.   According to Mathias, his probation was revoked on April 21, 2014, more than 7 years after his 5-year sentence was imposed, "causing his unlawful arrest and imprisonment." *Doc. 1* at ¶ 50 & ¶ 66.   Mathias alleges that defendants Billet-Barclay, Sabol, Alu, and Perry acted in concert to secure his false

arrest, that they intentionally and unlawfully deprived him of his liberty by illegally detaining and/or confining him, and that they conspired to "institute, procure, and continue" the criminal proceedings for a probation violation against him without probable cause. *Id.* at ¶ 94.   Mathias further contends that there is no legal authority or justification for the proposition that his sentence ceased to run while his appeals were pending.   Mathias also contends that he is a "member of a protected class," and he was arrested, detained, and maliciously prosecuted due to his race, national origin, and/or membership in a protected class. *Id.* at ¶¶ 107-109.

He contends that defendants Billet-Barclay, Sabol, Alu, and Perry violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and, according to Mathias, any reasonably well trained officer would have known or should have known of those rights.   And he contends that defendants Billet-Barclay, Sabol, Alu, and Perry acted willfully, maliciously, in bad faith, and in reckless disregard of his constitutional rights.   He alleges that because of the defendants' actions, he "suffered extensive and substantial injuries, including, but not limited to, loss of his freedom and severe emotional distress." *Id. 1* at ¶ 59.

Mathias also contends that defendants Billet-Barclay, Sabol, Alu, and Perry were policymakers for York County and York County Adult Probation Department, and in that capacity, they established policies, procedures, customs, and/or practices.

6

He contends that Judge Chronister's "unwritten directive" caused the York County Adult Probation Department to adopt a custom and/or policy of not supervising probationers while those probationers were appealing their cases. *Id.* at ¶ 81.   And, he contends, his injuries were the result of the official policy and/or custom of York County, York County Adult Probation Department, Billet-Barclay, and Sabol. More specifically, he contends that because of the policy or custom he was subjected to a period of probation in excess of the five years to which he was sentenced, that he was unlawfully arrested and maliciously prosecuted for a probation violation after his probation had expired, and he was unlawfully detained and required to serve an illegal sentence.

The complaint contains nine counts.   Count 1 is a 42 U.S.C. § 1983 claim against defendants Billet-Barclay, Sabol, Alu, and Perry for false arrest.   Count 2 is a 42 U.S.C. § 1983 claim against defendants Billet-Barclay, Sabol, Alu, and Perry for false imprisonment.   Count 3 is a 42 U.S.C. § 1983 claim against defendants York County, York County Adult Probation Department, Billet-Barclay, and Sabol for municipal liability.   Count 4 is a 42 U.S.C. § 1983 claim against defendants Billet-Barclay, Sabol, Alu, and Perry for malicious prosecution.   Count 5 is a 42 U.S.C. § 1983 and 42 U.S.C. § 1981 claim against defendants Billet-Barclay, Sabol, Alu, and Perry for racial discrimination.   Count 6 is a state law claim against

defendants Billet-Barclay, Sabol, Alu, and Perry for false arrest.   Count 7 is a state

law claim against defendants Billet-Barclay, Sabol, Alu, and Perry for false

imprisonment.   Count 8 is a state law claim against defendants Billet-Barclay,

Sabol, Alu, and Perry for malicious prosecution.   And Count 9 is a state law claim

against defendants Billet-Barclay, Sabol, Alu, and Perry for intentional infliction of

emotional distress.   Mathias is seeking compensatory and punitive damages as well

as interest and costs.

On July 21, 2016, defendant York County Adult Probation Department and

defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities filed a

motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and a brief in

support of that motion.   On August 8, 2016, defendant York County and defendants

Billet-Barclay, Sabol, Alu, and Perry in their individual capacities filed a motion to

dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and a brief in support of that motion.

After those motions were briefed, the parties consented to proceed before a

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the

undersigned.

Having considered the motions to dismiss and the parties' briefs, including

the letter briefs filed after the case management conference, we will grant the motion

to dismiss.

### III.   Motion to Dismiss Filed by Defendant York County Adult Probation Department and Defendants Billet-Barclay, Sabol, Alu, and Perry in Their Official Capacities.

Defendant York County Adult Probation Department and defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities bring their motion to dismiss as both a Fed.R.Civ.P. 12(b)(1) motion and as a Fed.R.Civ.P. 12(b)(6) motion.   We conclude that they are entitled to dismissal under Rule 12(b)(1).

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction.   Challenges to subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may be "facial" or "factual." *Turicentro, S.A. v. American Airlines, Inc.,* 303 F.3d 293, 300 n.4 (3d Cir. 2002).   A facial attack contests the sufficiency of the pleadings. *Id.*   When there is a facial attack, "we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 15-2309, 2017 WL 242554, at *5 (3d Cir. Jan. 20, 2017).   In contrast to a facial attack, "in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000). "The plaintiff has the burden of persuasion to convince the court it has jurisdiction." *Id.*

Here, defendant York County Adult Probation Department and defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities make a facial attack on the Court's subject-matter jurisdiction: they contend that the Court lacks jurisdiction because they are entitled to Eleventh Amendment immunity.

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).   It has been observed that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction").

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.   Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).   That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*   Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).   "The Eleventh Amendment's protection . . . is not limited to the States alone, but rather extends to entities that function as 'arms of the State.'" *Maliandi*, 845 F.3d at 81.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary*

11

*Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).   The Commonwealth of

Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A.

§ 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment

immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).   Accordingly, if the York County

Adult Probation Department is an arm of the state, the Eleventh Amendment bars all

the claims against it.

The Third Circuit employs "a fact-intensive, three-step balancing test to

ascertain whether a state-affiliated entity is an 'arm of the State' that falls within the

ambit of the Eleventh Amendment." *Maliandi*, 845 F.3d at 83.   In conducting that

balancing test, it has identified a number of factors, known as the *Fitchik* factors,

derived from *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659

(3d Cir. 1989).   "[T]he *Fitchik* factors are (1) the funding factor: whether the state

treasury is legally responsible for an adverse judgment entered against the alleged

arm of the State; (2) the status under state law factor: whether the entity is treated as

an arm of the State under state case law and statutes; and (3) the autonomy factor:

whether, based largely on the structure of its internal governance, the entity retains

significant autonomy from state control." *Maliandi*, 845 F.3d at 83.

"The Pennsylvania constitution provides for the vesting of the

Commonwealth's judicial power in a "unified judicial system" which includes all of

the courts in Pennsylvania." *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (quoting Pa. Const. art. V, § 1.).   "Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise 'general supervisory and administrative authority' over the unified judicial system." *Id*. (quoting Pa. Const. art. V, §§ 1, 2, and 10.)   "All courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies." *Id*. (citing Pa. Const. art. V, § 6(c); 42 Pa. Cons.Stat. Ann. § 102; 42 Pa. Cons.Stat. § 301).

In *Callahan*, the Third Circuit addressed whether First Judicial District was a person subject to suit under 42 U.S.C. § 1983.   Although addressing a question of statutory construction, rather than Eleventh Amendment immunity, the court applied the *Fitchik* factors. *Id*. at 670.   As to the first *Fitchik* factor, the court recognized that both the Commonwealth of Pennsylvania and the City of Philadelphia fund the First Judicial District. *Id*. at 672.   It found that factor "of limited utility in determining where the judicial defendants are persons under section 1983." *Id*.   It concluded, however, that "[a]pplication of the second and third *Fitchik* factors conclusively demonstrates that the judicial defendants are not persons within section 1983." *Id*.   Concluding that the judicial defendants are "part of the unified judicial system subject to the control of the Supreme Court," and that it is "perfectly clear

that the judicial defendants are not independent of the Commonwealth and hardly can be regarded as having significant autonomy from the Pennsylvania Supreme Court," it held that "while it is true that the judicial defendants largely are funded locally, we hold that they are not persons within section 1983." *Id*. at 673.

Building on *Callahan*'s analysis of the structure of the unified judicial system of Pennsylvania and its analysis of the *Fitchik* factors, the Third Circuit later held that the First Judicial District of Pennsylvania is a state entity entitled to Eleventh Amendment immunity. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component.   From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."). Several years later, the Third Circuit made it explicit that probation and parole departments of the courts are covered by the Eleventh Amendment. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (concluding that "as an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity," but holding that

in that case, the Eleventh Amendment immunity was waived by acceptance of federal funds under the Rehabilitation Act).

Based on *Haybarger*, it is clear that the York County Adult Probation Department is entitled to Eleventh Amendment immunity.   Mathias's reliance on *Harkins-Hosay v. City of Philadelphia*, No. CIV. A. 97-4718, 1997 WL 597646, at *2 (E.D. Pa. Sept. 19, 1997), to argue otherwise is misplaced.   In *Harkins-Hosay*, the court denied a motion to dismiss the First Judicial District on the basis of the Eleventh Amendment because the factual record had not been developed such that the court could consider the relevant *Fitchik* factors in determining whether the Eleventh Amendment applied.   *Harkins-Hosay* was decided before *Callahan*, *Benn*, and *Haybarger*.   Thus, it is not persuasive.

Also not persuasive is Mathias's contention that "the status of the relationship between the Commonwealth and the Defendant Probation Department is unclear at best," and the court cannot dismiss the York County Adult Probation Department on the basis of the Eleventh Amendment because the record regarding the *Fitchik* factors is not developed. *Doc. 9* at 11-12.   In *Haybarger*, the Third Circuit clearly held that probations departments are arms of the state entitled to Eleventh Amendment immunity.   Development of a record will not change that holding or this Court's obligation to adhere to that holding.   And following *Haybarger*, courts

routinely dismiss probation departments on the basis of the Eleventh Amendment

without developing a record. *See e.g. Lawson v. Dauphin Cty. Work Release*, No.

1:15-CV-02450, 2016 WL 6090758, at *6 (M.D. Pa. Sept. 15, 2016) (report and

recommendation of magistrate judge) (recommending that all claims against

Dauphin County Adult Probation be dismissed with prejudice on Eleventh

Amendment immunity grounds), *adopting Report and Recommendation*, 2016 WL

6082127, at *1 (M.D. Pa. Oct. 18, 2016); *Beaver v. Delaware Cty. Prob. & Parole*,

No. CV 15-2784, 2016 WL 4366977, at *3 (E.D. Pa. Aug. 16, 2016) (holding that

the Eleventh Amendment bars any claims against Delaware County Adult Probation

and Parole because it is an agency of the Commonwealth of Pennsylvania).   It has

even been determined that the very defendant here is entitled to Eleventh

Amendment immunity. *Evans v. York Cty. Adult Prob. & Parole Dep't*, No. CIV. A.

1:09-1013, 2010 WL 5135891, at *12 (M.D. Pa. Sept. 28, 2010) (report and

recommendation of magistrate judge) (recommending that the court *sua sponte*

grant summary judgment to the York County Adult Probation and Parole

Department on the basis of the Eleventh Amendment), *adopting in part and*

*rejecting in part on other grounds Report and Recommendation,* 2010 WL 5135890,

at *7 (M.D. Pa. Dec. 10, 2010) (agreeing with recommendation to grant summary

judgment to the York County Adult Probation and Parole Department based on the Eleventh Amendment).

In sum, the York County Adult Probation Department is a part of the state and is entitled to Eleventh Amendment immunity.   Defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities are also entitled to Eleventh Amendment immunity.   Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978).   In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   As defendants Billet-Barclay, Sabol, Alu, and Perry are officers of the York County Adult Probation Department, which is a Commonwealth entity, the claims against them in their official capacities are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.   Accordingly, we will grant the motion to dismiss filed by defendant York County Adult Probation Department and defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities.

Because defendant York County Adult Probation Department and defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities are entitled to

dismissal based on the Eleventh Amendment, we do not address their other

arguments in support of dismissal.


## IV.  Motion to Dismiss Filed by Defendant York County and Defendants Billet-Barclay, Sabol, Alu, and Perry in Their Individual Capacities.

Defendant York County and defendants Billet-Barclay, Sabol, Alu, and Perry

in their individual capacities move to dismiss the complaint under Fed.R.Civ.P.

12(b)(6).


### A.   Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."   When reviewing a

motion to dismiss, "[w]e must accept all factual allegations in the complaint as true,

construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading of

the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).   In making

that determination, we "consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if

the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch.*

*Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).   "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).   The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).   But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . .

19

. plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).


### B.   York County.

Mathias presents a municipal liability claim against defendant York County. A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978).   To state a claim against a municipality, the plaintiff must allege that the violation of his rights was caused either by a policy or by custom of the

20

municipality. *Id.* at 694; *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000).   Municipal policies include the decisions of a government's lawmakers and the acts of its policymaking officials as well as municipal customs, which are acts or practices that, even though not formally approved by an appropriate decision maker, are so persistent and widespread as to have the force of law. *Id.*; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003).   In other words, a municipality "'can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.'" *Mulholland v Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).   Additionally, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

According to the Mathias, his municipal liability claim is based on "an official policy and/or custom of failing and/or refusing to supervise probationers while they appealed their criminal cases." *Doc. 19* at 7.   Mathias fails, however, to allege facts from which it can reasonably be inferred that York County was responsible for that

policy or custom.   In that regard, he alleges that defendants York County, Sabol, and Billet-Barclay were policymakers for York County and the York County Adult Probation Department.   That Sabol and Billet-Barclay, state agents, were policymakers for the York County Adult Probation Department, a state entity, does not lead to an inference that York County was responsible for any policy they issued. Mathias does not plausibly allege facts suggesting that York County exercised authority or control over the York County Adult Probation Department or its employees.   As set forth above, the probation officials are state, not county, employees. *Collura v. Ford*, 637 Fed. App'x 673, 675 (3d Cir. 2016) (stating that judge and "employees of the First Judicial District's Parole Department are employed by the Commonwealth of Pennsylvania's Unified Judicial System, which is an instrumentality of the Commonwealth of Pennsylvania, and not the City"). "This is the case even if those positions receive local funding." *Id*.   Thus, they do not make policy for York County, and York County cannot be liable for their policies. *Id*. ("Because the City cannot be held liable for the alleged actions of Commonwealth employees, the District Court correctly dismissed Collura's claims as to the City."); *see also Ward v. Pennsylvania*, No. CIV.A. 14-00017, 2014 WL 4682067, at *3 (E.D. Pa. Sept. 22, 2014) (dismissing claims against Delaware County based on the policy of the Delaware County Office of Adult Probation and

Parole because that office "is an entity of the Commonwealth of Pennsylvania, not Delaware County," and the officers "are state rather than county officials" and plaintiff failed to make "factual allegations sufficient to show that Delaware County exercised any control over the policies, practices or events at issue in this case"); *Thompson v. Williams*, No. CIV.A. 09-1432, 2013 WL 2452205, at *6 (W.D. Pa. June 5, 2013) (concluding that given the holding in *Haybarger* that probation and parole offices are arms of the state, "Fayette County cannot be held accountable for the actions of a state entity and its agents over which it has no control"). Accordingly, the complaint fails to state a claim upon which relief can be granted against York County.

### C.   Defendants Sabol, Billet-Barclay, Alu, and Perry in Their Individual Capacities.

Defendants Sabol, Billet-Barclay, Alu, and Perry move to dismiss the claims against them in their individual capacities.   While we agree with Mathias that the moving defendants' arguments in support of dismissal are disjointed, we, like Mathias, construe the moving defendants to be making two arguments in support of dismissal.   We address each in turn.

Defendants Sabol, Billet-Barclay, Alu, and Perry assert that "[a]s employees of the County and the Department," they are entitled to immunity pursuant to the

Political Subdivision Tort Claim Act ("Act"), 42 Pa.C.S.§§ 8541-8564." *Doc. 8* at 6. As discussed above, however, and as the case law from the Third Circuit makes clear, probation officials are state, not county, employees.   Thus, the Political Subdivision Tort Claim Act, which grants municipalities and municipal officers immunity from liability from state tort claims, is not applicable.   Moreover, to the extent the moving defendants are suggesting that that Act provides them immunity from Mathias's § 1983 claims, that suggestion is meritless. *See Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3d Cir. 1985) ("This governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Acts.   The supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law.").

Defendants Sabol, Billet-Barclay, Alu, and Perry also contend that the complaint fails to contain factual allegations that would allow the Court to draw a reasonable inference that they violated Mathias's constitutional rights.

Liability under Section 1983 is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.   In other words, "state actors are liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015).   And so respondeat superior

24

cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).   "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   Thus, to establish a § 1983 claim, a plaintiff must show that a defendant participated in a violation of the plaintiff's rights, directed others to violate those rights, or otherwise had knowledge of and acquiesced in violations committed by subordinates. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Defendants Billet-Barclay, Alu, and Perry assert that the complaint is devoid of factual allegations pertaining to them and that the only allegations in the complaint as to Sabol are that he testified at a court hearing regarding President Judge Chronister's directive to the department.   Mathias responds that the complaint alleges that these defendants: "engaged in willful and/or malicious misconduct (Doc. 1, ¶¶ 100, 114, 128, 143, 154, 161); falsely arrested [him] with knowledge that they had not basis to do so. (Doc. 1, ¶ 46); intentionally deprived him of his liberty by unlawfully detaining him (Doc. 1, ¶ 69); worked in concert to secure false charges against him (Doc. 1, ¶ 91); conspired to institute a criminal proceeding against him without probable cause (Doc. 1, ¶¶ 94, 147); intentionally deprived him of the equal protection and benefits of the law based upon his race and/or national

origin (Doc. 1, ¶¶ 108-10); petitioned for the revocation of his probation knowing they lacked probable cause to do so (Doc. 1, ¶¶ 119, 123, 125, 128); intentionally caused his false imprisonment, knowing he was arrested without probable cause (Doc. 1, ¶¶ 132, 139, 144); acted maliciously and for a purpose other than bringing [him] to justice (Doc. 1, ¶ 153); engaged in extreme and outrageous behavior undertaken with the intent to cause, or with reckless disregard that their conduct would cause, severe emotional distress to [him] (Doc. 1, ¶¶ 157-58); and violated [his] clearly-established constitutional rights (Doc. 1, ¶¶ 54, 71, 91, 113)." *Doc. 19* at 11-12.   Mathias contends that these allegations satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that the complaint set forth a short and plain statement of the claim.

At the outset, we agree with Mathias that because his claims do not involve fraud, he is not required to meet the heightened pleading standard of Fed.R.Civ.P. 9(b), and the defendants' reliance on cases applying the Rule 9(b) standard is inappropriate.   We also reject the defendants' contention that civil-rights complaints are subject to a heightened-pleading standard. *See Evancho v. Fisher*, 423 F.3d 347, 352 (3d Cir. 2005) (noting that although at one time the Third Circuit applied a heightened-pleading standard to civil rights cases, after *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993),

"which was decided in 1993, the Third Circuit has applied the more liberal notice pleading standard set forth in Rule 8(a) in civil rights cases").   We nevertheless conclude that the complaint fails to state a claim against the defendants Sabol, Billet-Barclay, Alu, and Perry in their individual capacities.

While Mathias points out the many allegations he has asserted against the moving defendants, after putting aside the legal conclusions, which are not entitled to the assumption of truth, we are left with allegations that the defendants falsely arrested him, petitioned to revoke his probation, and detained him.   The problem is that Mathias lumps all the defendants together without specifying how each defendant was involved in those acts.   It is not always inappropriate to plead allegations against numerous defendants, but when the court cannot reasonably determine from the allegations what conduct each defendant was personally involved in, the complaint fails to comply with *Twombly* and *Iqbal*. *See Dolan v. PHL Variable Ins. Co.*, No. CV 3:15-CV-01987, 2016 WL 6879622, at *8 (M.D. Pa. Nov. 22, 2016) ("As numerous courts have held in the context of Rule 8, concluding mass and mutual liability without pleading the supporting facts does not show 'that the pleader is entitled to relief' and does not give any of the Defendants 'a fair notice of what the . . . claim is and the grounds upon which it rests.'"(quoting Fed.R.Civ.P. 8(a)(2) and citing cases).   That is the case here.   Because Mathias lumps the

27

moving defendants together, we cannot reasonably determine who did what.   For

example, Mathias alleges that the defendants falsely arrested him, but he does not

allege who actually arrested him.   And it is not reasonable to assume that all four of

the individual defendants arrested him, given that they have different job duties.

Moreover, from the allegations of the complaint, it appears that defendant Sabol

retired in 2012; thus, it is not reasonable to infer that he was actually involved in the

arrest of Mathias, which apparently occurred sometime in 2014.[1]   In sum, because

the complaint is not clear about how each defendant personally participated in the

alleged violations of Mathias's rights, we conclude that it fails to state a claim upon

which relief can be granted against defendants Sabol, Billet-Barclay, Alu, and Perry

in their individual capacities.


## V.   Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must

permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).   The

---

1 Mathias does not allege the date when he was arrested.   Whether the arrest was
before or after the court revoked his probation and sentenced him is important to
determining whether there was probable cause for the arrest and whether the Fourth
Amendment, one of the bases for Mathias's claims, is applicable at all. *See Halsey v.
Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014) (the Fourth Amendment does not apply
post-trial).

court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

Here, because the claims against York County Adult Probation Department and defendants Sabol, Billet-Barclay, Alu, and Perry in their official capacities are barred by the Eleventh Amendment, leave to amend as to those defendants would be futile.   Similarly, leave to amend as the York County would also be futile given that that actions at issue were taken by probation department employees, which are state, not county, employees.   We cannot say, however, that amendment would be inequitable or futile as to the claims against defendants Sabol, Billet-Barclay, Alu, and Perry in their individual capacities.   Thus, we will grant Mathias leave to file an amended complaint.

## VI.   Summary.

For the foregoing reasons, we will grant the motion (doc. 4) to dismiss filed by defendant York County Adult Probation Department and defendants Billet-Barclay, Sabol, Alu, and Perry in their official capacities.   We will also grant the motion (doc. 7) to dismiss filed by defendant York County and defendants Billet-Barclay, Sabol, Alu, and Perry in their individual capacities.   We will, however, grant Mathias leave to file an amended complaint as to his claims against defendants

Sabol, Billet-Barclay, Alu, and Perry in their individual capacities.   An appropriate

order follows.

                                        **_S/Susan E. Schwab_**
                                        Susan E. Schwab
                                        Chief United States Magistrate Judge