UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAHNAWAZ M. MATHIAS,    :    **CASE NO. 1:16-CV-01338**
    :
    Plaintiff    :
    :
    v.    :    (Chief Magistrate Judge Schwab)
    :
APRIL BILLET-BARCLAY, *et al*.,    :
    :
    Defendants    :

## <u>MEMORANDUM</u>
February 12, 2019

## I. Introduction.

The plaintiff Shahnawaz M. Mathias claims that the defendants violated his rights in connection with his probation supervision and probation-revocation proceedings. Currently pending are cross-motions for summary judgment as to some of Mathias's claims. For the reasons discussed below, we will grant the defendants' motion for summary judgment as to Counts I, II, III, and IX of Mathias's amended complaint, and we will deny Mathias's motion for partial summary judgment.

## II. Background and Procedural History.

In June of 2016, Mathias began this action by filing a complaint naming the following six defendants: (1) York County; (2) York County Adult Probation Department ("Department"); (3) April Billet-Barclay, Chief Probation Officer; (4) Albert Sabol, former Chief of Adult Probation; (5) Amy Alu, Adult Probation/Parole Supervisor; and (6) Crystal Perry, Adult Probation/Parole Officer. The defendants filed motions to dismiss the complaint. After those motions were briefed, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. Although we granted the motions to dismiss the complaint, we granted Mathias leave to file an amend complaint.

Mathias then filed an amended complaint naming Billet-Barclay, Sabol, Alu, and Perry in their individual capacities. Mathias alleges that Perry was his primary probation officer and the other defendants were her supervisors. He alleges that he was required to meet with Perry once a week, whereas others under Perry's supervision were not required to meet with her weekly. He further alleges that Perry made discriminatory and derogatory comments to him including telling him that he should marry within his own race, and she refused to allow him to get

married or have children.   He also alleges that Perry restricted his travel beyond the restrictions imposed by the court.

Mathias further alleges that the defendants penalized him every time he exercised his legal rights and filed an appeal by telling him that because he appealed, they were extending his probation.   He alleges that even though his term of probation had already expired, the defendants filed a petition to revoke his probation, which resulted in the court revoking his probation, after which he was arrested and incarcerated.   Mathias claims that the defendants falsely arrested him, falsely imprisoned him, and maliciously prosecuted him.

The amended complaint contains eight counts.   Counts I through III are 42 U.S.C. § 1983 claims for false arrest, false imprisonment, and malicious prosecution under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.   Count IV is a 42 U.S.C. § 1983 claim for racial discrimination in violation of the Equal Protection Clause and in violation of 42 U.S.C. § 1981. Counts V through VII are state-law claims for false arrest, false imprisonment, and malicious prosecution.   Count VIII is a state-law claim for Intentional Infliction of Emotional Distress.   And Count IX is a claim for civil conspiracy.[1]

---

[1]   In contrast to his other Counts, Mathias does not assert in the caption of this Count whether he is bringing this Count under federal law or state law.   But because he alleges that the defendants acted in concert to violate his rights under the Fourth,

The defendants filed an answer to the amended complaint, and the parties had time to conduct discovery.

Currently pending is Mathias's motion for partial summary judgment. Mathias's motion is a partial motion for summary judgment because his motion and his brief in support address only his claims that the defendants violated the Fourth, Fifth, and Fourteenth Amendments in supervising and revoking his probation and arresting and detaining him.  He limits his argument to the claims that the defendants extended his probation beyond his five-year sentence imposed by the court and arrested him for a probation violation after his five-year sentence had expired.  Mathias does not mention his racial-discrimination claims or his state-law claims.  Thus, we construe him as seeking summary judgment as to only Counts I, II, III, & IX of the amended complaint.

Also currently pending is the defendants' motion for summary judgment. Although the defendants do not title their motion as a partial motion for summary judgment, like we construe Mathias's motion, we construe the defendants' motion as a motion for partial summary judgment as to only Counts I, II, III, & IX of the

---

Fifth, and Fourteenth Amendments to the United States Constitution, we construe this Count as brought under federal law.   We further construe this Count as a claim that the defendants conspired to violate his rights under the Fourth, Fifth, and Fourteenth Amendments to be free from false arrest, false imprisonment, and malicious prosecution.

amended complaint.   The defendants contend that they are entitled to quasi-judicial

immunity and qualified immunity, doctrines which apply to only federal claims. *See*

*Miller v. New Jersey*, 144 F. App'x 926, 929 (3d Cir. 2005) (observing that

"qualified immunity is inapplicable to a state law cause of action"); *Tara M. by*

*Kantner v. City of Philadelphia*, 145 F.3d 625, 629 (3d Cir. 1998) (concluding that

absolute immunity did not apply to a state-law contribution claim against a guardian

ad litem).   The defendants do not mention Mathias's state-law claims.[2]   And in

their brief, they limit their arguments to Mathias's claims that they extended and

moved to revoke his probation beyond the five years imposed by the court and

arrested him for a parole violation after his five-year sentence had expired.   They do

not mention Mathias's racial-discrimination claims in their brief in support of their

motion for summary judgment.[3]   Thus, we construe the defendants as seeking

---

[2]   In connection with the earlier motions to dismiss the complaint, we held that
because probation officials are state, not county, employees, the defendants were not
entitled to immunity from Mathias's state-law claims under the Political Subdivision
Tort Claims Act, 42 Pa.C.S.§§ 8451 *et seq.*, which grants municipalities and
municipal officers immunity from liability from state torts. *See Doc. 30* at 24.   As
the defendants do not address the state-law claims in their motion for summary
judgment, they have not argued that they are entitled to immunity from the state-law
claims under the sovereign immunity that applies to Commonwealth parties. *See* 1
Pa. Cons. Stat. Ann. § 2310, 42 Pa. Cons. Stat. Ann. § 8521 *et seq.*   Thus, we do not
consider that issue at this time.

[3]   Although in their motion, the defendants assert that Mathias failed to produce
evidence to support his claims "unrelated to the probation violation," *see doc. 58* at

5

summary judgment as to only Counts I, II, III, & IX of Mathias's amended complaint.

### III. Summary Judgment Standards.

The parties move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that

---

4, they do not make such an argument in their brief. Thus, we will not consider the claims other than those in Counts I, II, III, and IX of the amended complaint.

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment

in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.* "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

"Courts are permitted to resolve cross-motions for summary judgment concurrently." *UHS of Delaware, Inc. v. United Health Servs., Inc.*, 227 F. Supp. 3d 381, 390 (M.D. Pa. 2016). But "[w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." *Id.*

## IV. Material Facts.

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the

9

statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the moving party means that those facts are deemed admitted. Further, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

Here, Mathias filed a statement of material facts in support of his motion for partial summary. Because the defendants have not filed a response to that statement of facts, the material facts set forth by Mathias are deemed unopposed.[4]

---

[4] In addition to facts, Mathias's statement of material facts contains several conclusions of law. *See Doc. 57* ¶ 21 ("The Fourth, Fifth and Fourteenth Amendment rights of Mr. Mathias were violated by Defendants Billet-Barclay, Perry, Alu and Sabol in continuing his probation beyond five years.") & ¶ 22 ("The Fourth, Fifth and Fourteenth Amendment rights of Mr. Mathias were violated by Defendants Billet-Barclay, Perry, Alu and Sabol by revoking his probation resulting in his incarceration in the York County Prison."). Although the material facts in Mathias's statement of material facts are deemed unopposed, conclusions of law are not.

Also, the defendants filed a statement of material facts in support of their motion for summary judgment, and Mathias filed a response. Because Mathias is the non-moving party as to the defendants' motion for summary judgment, we accept Mathias's version of any disputed facts.

### A. Mathias's probation sentence, his appeals, and the Department's policy of not supervising a probationer when an appeal is pending.

Mathias pleaded guilty in the Court of Common Pleas of York County to indecent assault and unlawful contact with a minor. *Doc. 59* (*Defendants' Statement of Undisputed Material Facts*) ¶ 1 and *Doc. 61* (*Shahnawaz Mathias' Response to Defendants' Statement of Undisputed Facts*) ¶ 1. On November 15, 2006, Judge Dorney sentenced him to five years of probation. *Doc. 57* (*Plaintiff's Concise Statement of Material Facts in Support of Motion for Partial Summary Judgment*) ¶ 1. That sentencing order was never modified. *Id*. ¶ 2.

Mathias filed numerous post-sentence motions, appeals of the denial of those motions, and petitions under the Post-Conviction Relief Act (PCRA). *Doc. 59* ¶¶ 3–12 and *Doc. 61* ¶¶ 3–12. While Mathias's appeal of the Order dismissing his second PCRA petition was still pending, he filed a petition to change treatment

providers. *Id*. ¶ 13. And at some point, the issue of how much time remained on Mathias's probation sentence came before the court. *Id*. ¶ 14.[5]

On December 3, 2013, the trial court held a hearing at which several witnesses, including defendant Sabol, who was the Chief Adult Probation Officer at the Department for 11 years until his retirement in December of 2012, testified. *Id*. ¶¶ 15–17. Sabol testified that in 2002, then President Judge Chronister of the York County Court of Common Pleas issued an unwritten directive "that when a case is on appeal in an upper court, [] the local court lacks jurisdiction and cannot change or alter a sentence, and he directed that [the Probation Department] no longer supervise cases that have taken an appeal." *Id*. ¶ 18 (purporting to quote from the trial court's

---

[5] In their statement of material facts, the defendants set forth as a fact: "In addition, on October 17, 2013, the York County Adult Probation Department (Department) filed a petition in which it sought a hearing to resolve how much credit time Plaintiff should receive toward his probation sentence. *See* Trial Court Docket (Ex. "F")." *Doc. 59* ¶ 14. In his response to the defendants' statement of material facts, Mathias denied that statement noting: "The Petition referenced in Exhibit F was filed by counsel for Mr. Mathias involving a request to terminate his probation supervision. (See p. 227 from Defendants' Motion)." *Doc. 61* ¶ 14. Although Mathias denied this statement of fact, he alleged in his amended complaint, albeit without reference to a date, that the Department filed a petition to resolve how much time credit he should receive toward his sentence. *See Doc. 32* ¶ 21. The precise date when such a petition was filed, or even which party filed such a petition, is not material to the issues currently before the Court.

December 5, 2013 Order,[6] but the quotation is actually from the Pennsylvania Superior Court's May 28, 2015 Opinion in *Commonwealth v. Mathias*, 121 A.3d 558, 560 (Pa. Super. Ct. 2015)) (brackets in original)).[7]  Sabol testified that the directive was issued, in part, to avoid having to reimburse probationers whose appeals are successful for the costs they incurred because of their probationary sentences. *Id.* ¶ 19.[8]  Pursuant to Judge Chronister's unwritten directive, the Department adopted a policy of not supervising persons sentenced to serve probation when those persons appeal a trial court's order (the "Department's policy"). *Id.* ¶ 20.  At the hearing challenging Mathias's ongoing probation,

---

[6]  Although this Order is dated December 3, 2013, it appears that it was not filed until December 5, 2013. *See Doc. 59-10.*  The parties refer to this Order as the December 5, 2013 Order, and we will do the same.

[7]  Mathias denies this statement of fact, stating that there is no reference to Judge Chronister in Exhibit J [the trial court's December 5, 2013 Order]. *See Doc. 61* ¶ 18. As mentioned above, the statement is from the Superior Court's opinion.  Further, the statement is the same as an allegation in Mathias's amended complaint. *Doc. 32* ¶ 25 (quoting *Mathias*, 121 A.3d at 560 (brackets in original)).  Thus, we conclude that there is not a genuine dispute that defendant Sabol testified as set forth in this statement of fact.

[8]  Again, Mathias denies this statement on the basis that it is not supported by the exhibit cited by the defendants—Exhibit J. *See Doc. 61* ¶ 19.  Again, however, the statement can be found in the Superior Court's opinion, *Mathias*, 121 A.3d at 560–61, and it is substantially the same as an allegation in Mathias's amended complaint, *see doc. 32* ¶ 26.  Thus, we conclude that there is not a genuine dispute that defendant Sabol testified as set forth in this statement of fact.

defendant Perry presented a calculation of the time Mathias had spent on probation excluding time that he had appeals pending. *Id*. ¶ 21 and *Doc. 59-10* (Exhibit J–December 5, 2013 Order of the trial court).

In an Order entered on December 5, 2013, the trial court determined that because of Mathias's multiple appeals, as of December 3, 2013, he still had 1,159 days of supervision to complete. *Doc. 59* ¶ 23 and *Doc. 61* ¶ 23.[9]   The trial court also denied Mathias's request to change counseling centers. *Id*.

The trial court denied Mathias's motion to reconsider the December 5, 2013 Order. *Id*. ¶ 24.   On January 27, 2014, Mathias filed a notice of appeal of the order denying the motion for reconsideration, and on May 5, 2014, the Superior Court quashed that appeal as untimely. *Id*. ¶ 25.

### B.   The revocation of Mathias's probation.

On March 14, 2014, while Mathias's appeal of the denial of his motion for reconsideration was still pending with the Superior Court, the Department filed a

---

[9]   Although Mathias denies this statement "as stated," he does not actually dispute that this is what the court found. *See Doc. 61* ¶ 23.   Rather, he asserts that "[t]he Court applied the illegal policy referenced in the testimony of Ms. Perry and Mr. Sabol and adopted their computation of Mr. Mathias' time served on probation. The Court did not make inquiry as to whether Mathias had been restricted in activities and travel; reported to the Probation staff or otherwise followed the limitations of one subject to probation from 2006 through the time of the December 2013 Hearing." *Id*.

petition to revoke his probation. *Id*. ¶ 26. They sought a hearing on whether Mathias violated his probation by failing to enter and successfully complete an approved sex-offender-treatment program. *Id*. Mathias admits that the did not complete the sex-offender-treatment program. *Id*. ¶ 34. After a hearing on that petition, the court determined that Mathias had violated his probation, revoked Mathias's probation, and sentenced him to serve six to twenty-three months in prison. *Id*. ¶¶ 27–29.

Mathias was paroled in September of 2014, ordered to resume sex-offender treatment, and ordered to report to the Department. *Doc. 56-7* at 2. In January of 2015, he was taken into custody again on the basis that he did not attend sex-offender treatment. *Doc 56-8* at 2–3. On February 4, 2015, he was sentenced to "Unserved balance of 546 days, paroled forthwith." *Id*. at 4.

### C.   The Pennsylvania Superior Court vacates Mathias's sentence.

Mathias appealed the revocation of his probation, and by an Opinion filed on July 29, 2015, the Superior Court vacated his sentence. *Doc. 59* ¶¶ 31, 33 and *Doc. 61* ¶¶ 31, 33. The Superior Court agreed with Mathias that the trial court imposed an illegal sentence on him when it revoked his probation and resentenced him. *Id*. ¶ 32. Although Mathias raised "a number of constitutional challenges to the 'unwritten directive' and the Department's policy of not supervising [his] probation

while his various appeals were pending[,]" the Superior Court observed that Mathias "ultimately contends that his sentence is illegal because his five-year term of probation had expired when the trial court revoked his probation and sentenced him." *Mathias*, 121 A.3d at 562. The Superior Court concluded that it did not need to reach Mathias's constitutional challenges to conclude that he was serving an illegal sentence. *Id*. It reasoned that at the time the trial court purported to revoke Mathias's probation, over seven years had passed since Mathias was sentenced and his five-year term of probation had expired. *Id*.

Further, according to the Superior Court, although the Department "may very well have a policy of **not supervising probation** when an appeal is pending," "that policy did not act to stay [Mathias]'s sentence and does not alter the fact that, during the pendency of his appeals, [Mathias] was **serving his sentence**." *Id.* at 562–63 (emphasis in original) (footnote omitted). The Superior Court noted:

> The record indicates that the Department's policy is fueled in large part by a misguided belief that, pursuant to Pa.R.A.P. 1701, the court lacked jurisdiction to supervise Appellant or to revoke his probation when an appeal was pending. For instance, at a proceeding that took place on January 30, 2012, the trial court cited Rule 1701 in support of its belief that a court loses jurisdiction to find a probation violation when an appeal is pending.
>
> As an initial matter, there simply is no language in Rule 1701 that justifies the Department's policy of not supervising a probationer while an appeal is pending. As to whether a court

16

> can revoke probation while an appeal is pending, Rule 1701 does generally state that, "after an appeal is taken . . ., the trial court . . . may no longer proceed further in the matter." Pa.R.A.P. 1701(a). However, the rule explicitly allows a court, after an appeal has been taken, to enforce an order entered in the matter. Pa.R.A.P. 1701(b)(2). Thus, when Appellant's appeals were pending, the trial court clearly could enforce the terms of Appellant's sentence of probation.

*Id.* at 562 n.4.

Because Mathias's term of probation had expired, the Superior Court concluded that the trial court lacked authority to revoke his probation, and the sentence it imposed on Mathias was illegal. *Id.* at 563. Thus, the Superior Court vacated Mathias's sentence. *Id.*

### D. The defendants and their application of the Department's policy to Mathias.

Mathias's probation should have ended on or about November 16, 2011. *Doc. 57* ¶ 4. But because of the Department's policy, Mathias was subject to ongoing probation supervision until 2014, when his probation was revoked, and he was sentenced to prison. *Id.* ¶ 5, 8.

Defendant Perry, who was a case worker for the Department, and defendants Billet-Barclay, Sabol, and Alu, who were supervisors with the Department, were aware that Mathias remained on probation beyond November of 2011 and that there was no court order extending his probation. *Id.* ¶¶ 6, 7, 10, 11, 13, 14, 16, 17. None

of the defendants advised Mathis that his probation had been suspended or terminated during his appeals. *Id*. ¶¶ 9, 12, 15, 18.   Within the activity logs of the Department, there is no record that Mathias was supervised on any of the dates defendant Perry indicated as being uncredited due to the pendency of an appeal. *See doc. 59* ¶ 22 and *doc. 61* ¶ 22.[10]   But, as set forth above, the defendants never told Mathias that his supervision had been terminated.   Further, the defendants did not apply the Department's policy consistently in that Mathias's probation was revoked and he was incarcerated at a time when he was appealing from an earlier ruling in his case. *Id*. ¶ 19.

## V.  Discussion.

The defendants contend that they are entitled to qualified immunity from Mathias's claims based on their supervision of him after his five-year probation sentence expired, their petition to revoke his probation after his sentence had expired, and his arrest and detention.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages

---

[10]   Although Mathias denies this statement, he does not point to any place in the Department's logs where he was being supervised when an appeal was pending. *Doc. 61* ¶ 22.   Rather, he asserts that he was not told that he was not on probation during these times, and Perry moved to revoke his probation during the pendency of one of his appeals. *Id*.

if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first given the circumstances of the case. *Pearson,* 555 U.S. at 236.  So, it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the

defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

In this case, we turn first to whether the law was clearly established. This "qualified immunity analysis looks through the rearview window, not the windshield." *Williams v. Secretary Pa. Dept. of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

In response to the defendants' qualified-immunity defense, Mathias contends that his "Fifth Amendment right to not be deprived of life, liberty or property without due process was violated by the Defendants who recognized that the probation Order entered in 2006 was for a term of five (5) years that should have expired in November of 2011." *Doc. 62* at 10. But the Due Process Clause of the Fifth Amendment applies only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995). "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or

employees." *Id.*   Here, the defendants are state officials.   The parties have not cited, and the Court is not aware of, any caselaw that establishes that state officials violate clearly established rights under the Fifth Amendment under the circumstances of this case.   Thus, the defendants are entitled to qualified immunity from Mathias's Fifth Amendment claims.

Although Mathias mentions the Fourth and the Fourteenth Amendments in the conclusion of section of his brief, he does not mention those amendments in the argument section of his brief.   And he has made no attempt to show that it was clearly established under the circumstances of this case that the defendants violated his rights under the Fourth or Fourteenth Amendment.   Nevertheless, we proceed to address whether it was clearly established under the Fourth or Fourteenth Amendment that probation officials violate clearly established rights by continuing to supervise a probationer beyond the term of his probation pursuant to a Department policy and after a court has concluded that the probationer is still subject to supervision, by moving to revoke his probation after his probation sentence had expired, and by arresting and detaining him after his probation had been revoked by the court.

Mathias contends that the Department's policy was inconsistent with Pa.R. App.P. 1701. *Doc. 62* at 13.   The defendants concede that the Superior Court

decided that Mathias's incarceration was contrary to Pennsylvania law. *See Doc. 60* at 13. Mathias concludes that because the defendants followed a policy that was inconsistent with Pennsylvania's law, their qualified-immunity defense fails. *Doc. 62* at 13. But this argument confuses the question of whether the defendants violated Pennsylvania law, with the question whether they violated clearly established law under the Fourth or the Fourteenth Amendment. As to this latter question, Mathias makes no argument.

And although at the time of the events in this case, the general standards under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment were clearly established, for qualified-immunity purposes the law cannot be defined at such "a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined" in such general terms. *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Rather, because the qualified-immunity inquiry "focuses on the official's actual situation, the analysis 'must be undertaken in light of the specific context of the case, not as a broad general proposition . . . .'" *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier,* 533 U.S. at 201). In other words, "context matters," *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018), and "the clearly established law must be 'particularized' to the facts

of the case," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson*, 438 U.S. at 639)).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al–Kidd,* 563 U.S. at 741). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *al-Kidd,* 563 U.S. at 741). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd*, 563 U.S. at 743).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "In this inquiry, '[w]e look first to applicable Supreme Court precedent.'" *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (quoting *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235,

247–48 (3d Cir. 2016)).   If there is no Supreme Court precedent, "'it may be possible that a robust consensus of cases of persuasive authority in the Courts of Appeals could clearly establish a right for purposes of qualified immunity.'" *Id*. at 194 (quoting *L.R.*, 836 F.3d at 248).   But "[i]t is not enough that the rule is suggested by then-existing precedent." *Wesby*, 138 S.Ct. at 590.   Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.   "It is only when both the theory of liability and its application to the established facts are sufficiently plain that the legal question of liability is beyond legitimate debate and a plaintiff can defeat a qualified immunity defense." *Sauers*, 905 F.3d at 719.

Here, the defendants contend that because the trial court's December 5, 2013 Order provided that Mathias remained subject to probation supervision for another 1,159 days, they acted reasonably in continuing to supervise him.   The parties do not point to, and the Court is not aware of, any cases from which it could be concluded that it was clearly established that the defendants violated Mathias's Fourth or Fourteenth Amendment rights by continuing to supervise him after five years given the December 5, 2013 Order.   Further, in addition to the Order of December 5, 2013, the extension of Mathias's supervision stemmed from the Department's policy of suspending supervision when an appeal is pending.

Although a policy of a defendant's employer cannot "make reasonable a belief that was contrary to a decided body of case law," whether the defendant acted pursuant to an established policy of his or her employer is a relevant consideration in deciding whether the defendant is entitled to qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (concluding that it "was not unreasonable for law enforcement officers to look and rely on their formal ride-along policies"). And here, the Department's policy was adopted based on an unwritten directive of then-Chief Judge Chronister of the Court of Common Pleas. Thus, given the unique circumstances facing the defendants in this case, we conclude that the defendants are entitled to qualified immunity from Mathias's Fourth and Fourteenth Amendment claims based on their continued supervision of him.

We next turn to Mathias's Fourth and Fourteenth Amendment claims based on the defendants moving to revoke his probation. It is true, as Mathias asserts, that by moving to revoke his probation when he still had an appeal pending, the defendants applied the Department's policy inconsistently. But Mathias contends that the Department's policy was inconsistent with Pennsylvania law. If that is so, there is no basis to conclude that the defendants violated his rights merely by failing to follow that policy at the time they moved to revoke his probation. Moreover, considering the Order of December 5, 2013, which provided that Mathias still had

1,159 days of supervision left on his sentence, a reasonable probation officer in the defendants' position could have reasonably believed that moving to revoke Mathias's probation was not in violation of his Constitutional rights. And the parties do not point to, and the Court is not aware of, any cases from which it could be concluded that the it was clearly established that the defendants violated Mathias's Fourth or Fourteenth Amendment rights by moving to revoke his probation when they did given the December 5, 2013 Order and given that Mathias admits that he did not complete the sex-offender-treatment program, which was the basis on which the defendants moved to revoke his probation. Thus, the defendants are entitled to qualified immunity from Mathias's Fourth and Fourteenth Amendment claims based on their moving to revoke his probation.

Finally, we turn to Mathias's claims that the defendants violated his Fourth and Fourteenth Amendment rights by arresting and detaining him. In addition to the arrest and detention occurring after the December 5, 2013 Order, Mathias's arrest and detention occurred after the court had revoked Mathias's probation and sentenced him to imprisonment. The parties do not point to, and the Court is not aware of, any cases from which it could be concluded that it was clearly established that the defendants violated Mathias's Fourth or Fourteenth Amendment rights by arresting and detaining him given after the court order revoking his probation and

sentencing him. Thus, the defendants are entitled to qualified immunity from Mathias's Fourth and Fourteenth Amendment claims based on his arrest and detention.

In an attempt to counter the defendants' qualified-immunity defense, Mathias cites *Anderson v. Creighton*, 483 U.S. 635 (1987), which dealt with the warrantless search of a home, and *Lancie v. Giles*, 572 A.2d 827 (Pa. Commw. Ct. 1990), which dealt with the execution of a search warrant at a home. *See Doc. 56* at 7–10. But both of those cases arose the context of the entry and search of a home, which is far afield of the circumstances in Mathias's case. And even Mathias appears to recognize that. *See Doc. 56* at 10 ("In this case, we are not dealing with the ambiguities of a search warrant and ownership of property; rather, we are dealing with the enforcement of a term of probation as set forth by an Order of the York County Court of Common Pleas.").

Both the defendants and Mathias also point to *Spiker v. Whittaker*, 553 F. App'x 275 (3d Cir. 2014). In that case, the Allegheny County Board of Probation and Parole failed to inform Spiker he was required to register with the state police as a sex offender and failed, as required by Pennsylvania statute, to forward Spiker's information to the state police. *Id.* at 277. Shortly thereafter an assistant district attorney instructed a detective to investigate whether Spiker had registered as a sex

offender, and after doing so, the detective obtained a warrant and arrested Spiker for failing to register as a sex offender. *Id.* Spiker was then released on bond, and he registered as a sex offender. *Id.* The next day, however, he "was arrested again, this time for violation his probation, as his arrest the previous day was a violation of the terms of his release." *Id.* Spiker claimed that Whittaker, a probation supervisor, sought the bench warrant, initiated his arrest, and issued a detainer, which resulted in him remaining in custody for 320 days until he was acquitted of the charge of failing to comply with the sex-offender-registration requirement. *Id.* Spiker filed suit claiming he was falsely arrested, falsely imprisoned, and maliciously prosecuted in violation of the Fourth and Fourteenth Amendments. *Id.* The court observed that the defendants believed there was probable cause for Spiker's arrest because he was not registered at the time the warrant for his arrest was obtained. *Id.* at 278. The court held that the district court correctly concluded that the defendants were entitled to qualified immunity given the "the interplay" between a sexual offender's duty to register and the probation officer's duty to inform the state police was not clearly established. *Id.* at 280.

The circumstances in *Spiker* are not even remotely analogous to the circumstances in this case, and the Third Circuit held that the defendants there were entitled to qualified immunity. Thus, *Spiker* does not clearly establish that the

defendants violated Mathias's rights given the completely different circumstances that they faced. Moreover, *Spiker* was not decided until April 2, 2014, after the defendants here moved to revoke Mathias's probation. Thus, even if *Spiker* could somehow be seen as relevant to the claims in this case, it was not decided until after the salient action in this place had already taken place. Thus, it could not have provided the defendants with notice that their actions violated Mathias's rights. Also, as a single, unpublished decision, *Spiker* is not the "robust consensus of cases of persuasive authority in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity.'" *Kane*, 902 F.3d at 248 (quoting *L.R.*, 836 F.3d at 248).

In sum, we conclude that the defendants are entitled to qualified immunity as to Counts I, II, III, and IX of Mathias's amended complaint. Given that conclusion, we do not address the defendants' other arguments for why the court should grant their motion for summary judgment as to Counts I, II, III, and IX and deny Mathias's motion as to those counts. And given the conclusion that the defendants are entitled to summary judgment based on qualified immunity as to Counts I, II, III, and IX of the amended complaint, the remaining claims that will go forward are the claims in Counts IV through VIII of the amended complaint, which are Mathias's racial-discrimination claims and his state-law claims.

## VI.   Summary.

For the foregoing reasons, we will deny Mathias's motion for partial summary judgment (doc. 55), and we will grant the defendants' motion for summary judgment (doc. 58) as to Counts I, II, III, & IX of the amended complaint.   An appropriate order follows.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge